810 F.2d 1055
 Belinda Joy MOTES, Plaintiff-Appellant,
v.
James Ronnie MYERS, Kenneth Jones, Rockdale County Board of
Commissioners, Charles Smith, Chairman, City of
Conyers, Barbara Bramblett, City
Manager, Defendants-Appellees.
 No. 86-8356
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 20, 1987.
 
 Pamela G. Guest, Doraville, Ga., for plaintiff-appellant.
 Arthur H. Glaser, Atlanta, Ga., John A. Nix, Conyers, Ga., for Myers.
 Alan F. Herman, Atlanta, Ga., for C. Conyers & Bramblett.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before HATCHETT and CLARK, Circuit Judges, and TUTTLE*, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 This case involves a dispute over title to an air conditioner. On its surface, the lawsuit seems trivial and lacking in federal jurisdiction. Underneath lurks the question of whether plaintiff Motes was deprived of her constitutional right of liberty without due process of law and whether 42 U.S.C. Sec. 1983 affords her relief and federal jurisdiction of her claim. Belinda Joy Motes sued Sergeant James Ronald Myers, an officer with the City of Conyers Police Department, and Deputy Sheriff Kenneth Jones, an officer of the Rockdale Sheriff's Department, for unconstitutionally arresting her, and the City of Conyers and the County of Rockdale for improperly hiring, training, supervising and retaining these two officers. Specifically, Motes alleges that she was wrongfully imprisoned without probable cause, that excessive force was used in her arrest, and that there was an unlawful search of her home. Furthermore, Motes claims that during the arrest she sustained physical injury in the form of bruises, and that after the arrest she suffered mental and emotional anguish, and aggravation of her epileptic condition. We construe the complaint to assert a Sec. 1983 claim of deprivation of a liberty interest, as well as the right to possess one's property free from an illegal search.
 
 
 2
 The district court granted defendant Myers' motion to dismiss, and in the alternative, for summary judgment, granted the City of Conyers' motion for summary judgment, granted the motion by the City of Conyers' Manager for judgment on the pleadings in her favor, and dismissed all pendent state claims without prejudice. We reverse the dismissal and grant of summary judgment in favor of defendants Myers and Jones on grounds that Motes has alleged facts sufficient to state a cause of action under 42 U.S.C. Sec. 1983. We affirm as to the City of Conyers and Bramblett. As the subsequent discussion will show, Myers' actions were those of a private citizen, not a City of Conyers policeman. Thus, the City is not involved. The judgment of the district court against the plaintiff included defendants Rockdale County and Chairman Charles Smith. The district court made no reference to these defendants in the dispositional part of its order, nor did it discuss them in its findings of fact and conclusions of law. We include these defendants in our remand without expressing an opinion as to whether they are entitled to pre-trial summary judgment.
 
 FACTS
 
 3
 Motes' arrest grew out of a two-year dispute with Myers over ownership of an air conditioner installed in a rental house on his property. Motes and Myers have been acquainted with each other since high school, and Motes began dating Myers' brother Wendell during the summer of 1982. At that time, Wendell moved into Myers' rental house and agreed to fix it up in exchange for free board. Subsequently, Wendell installed Motes' air conditioner in the house. Motes contends that she merely loaned the air conditioner to Wendell, and that she owns it. Myers claims that, to the best of his knowledge, the air conditioner was given to Wendell, probably by Motes.
 
 
 4
 Beginning in May, 1984, the issue of ownership of the air conditioner arose in several conversations between different people. In May, Motes' mother requested Myers to return the unit, and he refused. Also in May, Myers asked the Chief of Police in Conyers, Roland Vaughn, whether he or Motes owned the air conditioner. Vaughn suggested that he consult an attorney on the question. Meanwhile, Myers' wife asked Frank Smith, a Justice of the Peace in Rockdale County, for advice on the same question, and he told her that the air conditioner was abandoned property that now belonged to the Myers. In May or June, 1984, Myers and Wendell also discussed ownership of the unit. Sometime between May and August, Motes told Wendell that she wanted the air conditioner back, and Wendell replied that it now belonged to Myers. Finally, Motes' mother had a conversation about the unit with the tenant occupying Myers' rental house at that time, Junior Ramey. Motes contends that Ramey knew that the air conditioner belonged to her and that she was planning to retrieve it.
 
 
 5
 On August 10, 1984, Motes, her husband Darrell, and Jim, a friend interested in purchasing the air conditioner, went to the rental house. Motes claims that she entered the house with the permission of Mrs. Ramey, who did not protest removal of the air conditioner. Shortly thereafter, Mrs. Ramey called Mrs. Myers, who alerted her husband that Motes had removed the air conditioner. At that time, Myers was working off-duty as a security guard at Burger King, and he immediately discussed the incident with the City of Conyers' Chief Investigator, who was also working at the Burger King. The Investigator, who is not a defendant in this case, advised Myers to take out an arrest warrant for Motes. Myers proceeded to the residence of Justice of the Peace Smith, where he swore out a warrant for Motes' arrest for theft by taking. Smith requested Myers to accompany Deputy Sheriff Kenneth Jones of the Rockdale County Sheriff's Office to Motes' home, and to try to settle the dispute without the necessity of serving the warrant. Deputy Sheriff Kenneth Jones was the officer who had responded to Mrs. Myers' call reporting the incident.
 
 
 6
 Although it was after midnight, the late hour did not deter Myers and Jones from going to Motes' home. Motes, alone in the house, initially opened the front door, but she shut it when she realized that the officers intended to arrest her. Although Justice of the Peace Smith asked Myers to attempt first to settle the dispute without an arrest, no evidence suggests that this happened. A scuffle ensued, and the officers gained entrance. Jones and Myers searched Motes' bedroom and bathroom before permitting her to change her clothes in the bathroom, and then took her to jail.
 
 
 7
 Motes spent approximately two hours in the jail, where she was booked and fingerprinted. Subsequently, she was released on bond to her husband and mother. Charges against her were dismissed by Judge Vaughn of Rockdale County after the district attorney placed the case on inactive status. The Sheriff's Department conducted an informal investigation of the matter after Motes complained, but no written report was filed.
 
 DISCUSSION
 
 8
 We review the district court's grant of summary judgment by resolving credibility questions and drawing permissible inferences in favor of Motes, the non-moving party. Crockett v. UniRoyal, 722 F.2d 1524, 1528 (11th Cir.1985). Review of the district court's disposition of legal issues is, of course, de novo. Id. at 1529. In this case, the district court failed both to apply the appropriate legal standard in analyzing the presence of state action, and to accord sufficient weight to the testimony of Motes and other persons deposed.
 
 
 9
 Section 1983 plaintiffs must establish both deprivation of a right secured by the United States Constitution or federal laws and action by a defendant under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Scott v. Dixon, 720 F.2d 1542, 1545 (11th Cir.1983), cert. denied, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); Williams v. Kelley, 624 F.2d 695, 697 (5th Cir.1980), cert. denied, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). The district court concluded that there was "no evidence to indicate that Myers was acting under the color of state law when obtaining the warrant from Judge Smith" because it found that Myers had acted as a private citizen in taking out the arrest warrant and in accompanying Jones to Motes' home and to the jail. Thus, the state action requirement was not met. The court also found that Motes failed to introduce sufficient evidence to show that actions by Myers' or other defendants had deprived her of any rights secured by the Constitution or federal laws. Both of these conclusions are erroneous.
 
 I. STATE ACTION
 
 10
 The state action requirement of Sec. 1983 may be satisfied if the constitutional deprivation results from a private person's use of a state procedural law to effectuate a purpose not intended by state law and not permitted by the Constitution. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54, 73 L.Ed.2d 482 (1982). Motes contends that she was deprived of her liberty interest when she was arrested and imprisoned on the basis of the warrant sworn out by Myers. The authority to deprive a person of a liberty interest by arrest and criminal prosecution through swearing out a warrant is one created by state law. Motes contends that Myers' purpose was to regain possession of the air conditioner.
 
 
 11
 Lugar established that the state action requirement is satisfied when the party "is a state official, ... has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. at 937, 102 S.Ct. at 2754. The holding in Lugar authorized a Sec. 1983 cause of action against a private party who made use of a state statute that permitted the private party to deprive plaintiff of his property in violation of the Fourth Amendment. Edmondson Oil Co., pursuant to a pre-judgment writ of attachment obtained by it from a state official, caused the State of Virginia to seize Lugar's property. In discussing the elements of such a cause of action, the Court reiterated its previously established principle that the requirements of "under color of state law" has the same meaning as "state action" required under the Fourteenth Amendment. Lugar, 457 U.S. at 929, 102 S.Ct. at 2749.
 
 
 12
 The relationship between a private party and the state which permits a determination that the private party was a "state actor" is stated succinctly in Lugar as follows:
 
 
 13
 As is clear from the discussion in Part II, we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. The rule in these cases is the same as that articulated in Adickes v. S.H. Kress & Co., supra, 398 U.S., at 152, 90 S.Ct., at 1605-06, in the context of an equal protection deprivation:
 
 
 14
 " 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' " quoting United States v. Price, 383 U.S. , at 794, 86 S.Ct. [1152], at 1157 [16 L.Ed.2d 267].
 
 
 15
 The Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state-created attachment procedures. That holding is contrary to the conclusions we have reached as to the applicability of due process standards to such procedures. Whatever may be true in other contexts, this is sufficient when the State has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute.
 
 
 16
 457 U.S. at 941-42, 102 S.Ct. at 2756 (emphasis added).
 
 
 17
 In Baskin v. Parker, 602 F.2d 1205 (5th Cir.1979),[1] we held that a sheriff and a deputy sheriff could be held liable for an illegal and unreasonable search of plaintiff's property because the deputy sheriff lacked probable cause to obtain the search warrants in that he knew the informants were not creditable. It would be anomalous indeed to hold a public official liable for deprivation of a party's constitutional rights under color of state law, and deny relief when a private party sets in action pursuant to state law a similar deprivation of liberty or property.
 
 
 18
 The district court found as an uncontroverted fact that Myers was not acting in his official capacity as a police officer, but in his individual capacity as a private citizen. Therefore, summary judgment is premature because Motes has alleged facts sufficient to create a jury question as to the existence of state action under the Lugar test. There clearly exists a conflict in the facts as to whether Myers acted as a consequence of a private dispute over title to the air conditioner when he executed under oath the affidavit that became the basis for the issuance of the warrant.
 
 
 19
 There is evidence that Myers obtained significant aid from state officials. First, he consulted with the Conyers' Chief Investigator as to what he should do about Motes' action. Next, at almost midnight and on the basis of the advice received, Myers proceeded immediately to the residence of the Justice of the Peace Smith, from whom he secured a warrant for Motes' arrest on the theft charge. Then, he accompanied Deputy Sheriff Jones to Motes' home and assisted him in making the arrest.
 
 II. DEPRIVATION OF A RIGHT
 
 20
 A. Arrest.
 
 
 21
 An individual's right to be free from unlawful arrest and imprisonment implicates a liberty interest indisputably protected by the Constitution and federal laws, the violation of which may give rise to a cause of action under Sec. 1983. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir.1977). Under the Fourth Amendment, a person has the right not to be arrested unless probable cause justifies the arrest. See Baker v. McCollan, 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir.1985).
 
 
 22
 More specifically, this circuit has recognized a cause of action under Sec. 1983 for false arrest and imprisonment motivated by the desire to settle a private dispute. See Scott v. Dixon, 720 F.2d 1542, 1546 (11th Cir.1983), cert. denied, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); see also Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir.1979). In Scott, the defendant sold the plaintiff a truck on credit, and a dispute arose regarding the payment agreement. Dixon, who happened to be Chairman of the Board of Commissioners, swore out an affidavit for the issuance of a warrant for Scott's arrest, which charged him with endangering a security interest. After five months of threatening Scott with legal action, Dixon directed the police to effect his arrest. The precise issue in Scott concerned the presence of state action, but the court recognized implicitly that a defendant acting pursuant to a state procedural scheme which allows through its abuse the arrest of a plaintiff over a personal dispute states a cause of action under Sec. 1983. The Third Circuit has also ruled that a defendant's misuse of the criminal process through the initiation of criminal charges against a plaintiff without probable cause or for reasons of personal animosity is clearly actionable under Sec. 1983. Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 907 (3d Cir.1984).
 
 
 23
 Motes' liberty interest in freedom from false arrest and imprisonment is clearly of constitutional dimension. Thus, the question presented in this case is whether Motes was deprived of her liberty interest in violation of the Fourth and Fourteenth Amendments, and the answer depends on whether Myers abused the state warrant process to settle a private dispute. The district court found that the facts indicated a private dispute between Myers and Motes over ownership of the air conditioner. Myers characterized the dispute alternatively as a "very minor domestic disagreement" and as a "soap-opera type domestic dispute." Appellee's Brief at 16. Evidence that Myers and his wife discussed ownership of the air conditioner with other people on several occasions indicates that Myers knew its title was disputed. The evidence submitted thus far also indicates that Myers never attempted to settle the dispute before serving the warrant, as Justice of the Peace Smith had requested. It remains for the jury to decide whether Myers believed, in good faith, that a crime had been committed by Motes, or whether he swore out the warrant to coerce settlement of a private disagreement or to harass Motes. Summary judgment on this question is clearly inappropriate.
 
 
 24
 B. Use of Force and Illegal Search.
 
 
 25
 The district court granted summary judgment for defendants on the issues of illegal search and excessive use of force when making an arrest based upon the conclusion that the search and the force used were reasonable. We do not pass on the correctness of these conclusions. They were based upon an assumption that the arrest was constitutional. Since we remand for a jury determination of that issue, we leave such decisions for the jury. It is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the Sec. 1983 violation. If the jury finds the arrest constitutional, it can determine the reasonableness of the use of force and of the search pursuant to the court's instructions.
 
 CONCLUSION
 
 26
 Motes has established conflicting facts sufficient to withstand defendants' Myers and Jones motions for summary judgment on her Sec. 1983 and pendent state law claims. We reverse and remand to the district court to consider whether defendants Myers and Jones violated Motes' civil rights by abusing the arrest warrant process to settle a private dispute, by using excessive force to effect her arrest, or by conducting an illegal search of her home, and whether Rockdale County has any liability for Jones' actions.
 
 
 27
 REVERSED and REMANDED.
 
 
 
 *
 See Rule 3, Rules of U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209