Charles Wayne FOSTER and Dana Gay
Foster, Appellants,

v.

METROPOLITAN AIRPORTS COMMIS-
SION, Officers A. Baetz, Bruce
Griller, and J. Edblom, Appellees.

No. 89–5343.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1990.

Decided Sept. 20, 1990.

Barry G. Reed, Minneapolis, Minn., for appellants.

Timothy R. Schupp, Minneapolis, Minn., for appellees.

Before McMILLIAN and ARNOLD, Circuit Judges, and FRIEDMAN,[*] Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Charles Wayne Foster and Dana Gay Foster, husband and wife, brought this action under 42 U.S.C. § 1983 against the Metropolitan Airports Commission of Minneapolis and St. Paul and three of its officers. Plaintiffs alleged that defendants arrested Charles Foster without probable cause and that defendants used excessive force in making the arrest in violation of Foster's rights under the fourth, fifth and fourteenth amendments of the United States Constitution. The district court[1] granted summary judgment in favor of defendants on plaintiffs' claims of unlawful arrest and excessive force and dismissed without prejudice their pendent state law claims. Plaintiffs appeal. We affirm.

BACKGROUND

On November 4, 1987, Charles Foster drove his wife and their two children to the Minneapolis/St. Paul International Airport. Dana Foster and the two children were flying to Texas to visit the children's grandparents. Charles Foster was not traveling with them.

Foster pulled up to the unloading zone on the upper level of the airport terminal which is designated for loading and unloading passengers. Signs posted there indicate that no parking or waiting is allowed. As usual, the airport was busy. Because Foster could not leave the car unattended and his wife could not handle the bags and the two children, Dana Foster and her daughter proceeded into the terminal to check their bags while Foster and his infant son waited in the car. After checking her bags, Dana intended to return to the car to retrieve her son.

Officer Andrew Baetz of the Metropolitan Airports Commission, who was responsible for maintaining traffic and clearing traffic congestion on the upper level of the terminal, approached Foster and asked him to move his car. Foster, who was seated in the car, tried to explain to Baetz that he was in the process of unloading, that his son was also flying with his wife, and that he did not have time to circle the airport. Baetz did not appear to hear him. The facts are unclear as to whether Baetz stood by Foster's car and insisted he move or whether Baetz continued on his rounds and returned to ask Foster to move. Nevertheless, it is undisputed that Foster was asked at least three times to move his car.

When Foster refused for the second or third time to move his car, approximately five minutes after being told to do so, Baetz issued him a parking ticket and asked him again to move his car. Foster, who was visibly angry and frustrated by this time, tore up the ticket. Baetz told Foster he assumed Foster was not going to pay the parking ticket and told Foster he was under arrest. Foster responded by attempting to roll up the car windows and lock the doors. Officers Bruce Griller and Joann Edblom approached the car to assist Baetz. Fearful his son would be left unattended, Foster refused to get out of the car and clung to the frame of the door. The officers forcibly removed Foster from the car and handcuffed him. Dana Foster meanwhile emerged from the terminal to retrieve her son.

Foster was taken by Officers Baetz and Edblom to a holding area inside the terminal. According to Foster, the officers pushed him against the elevator wall and roughed him up on the way to the holding area. Foster was detained in handcuffs for two hours while the officers ran a warrant

---

[*] The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

check and identification query on Foster's Texas driver's license. The warrant check revealed an outstanding warrant issued in Arizona for "Dean Bryan Foster." Dean Bryan Foster was described as a male, 5'11", weighing 160 pounds with brown hair and blue eyes and born on October 31, 1961. Foster's driver's license also indicated an October 31, 1961, birthdate. Further checking revealed that Dean Bryan Foster had a tattoo on his right shoulder. The officers checked Foster's right shoulder for a tattoo, and, finding none, decided he was not the target of the warrant. Foster was fingerprinted, photographed, and released from custody approximately two hours later.

Foster was charged with a parking violation and interference with an officer's duties in violation of Minn.Stat. § 609.50, subd. 2 (1986).[2] Foster paid the parking fine. The charges under § 609.50 were dropped due to a pending challenge to the statute's constitutionality. The statute was eventually upheld by the Minnesota Supreme Court. *State v. Krawsky*, 426 N.W.2d 875 (Minn.1988).

Foster and his wife then filed this § 1983 suit in federal court along with various pendent state law claims. Plaintiffs' federal claim alleged unlawful arrest and excessive force in violation of the fourth, fifth and fourteenth amendments to the United States Constitution. Plaintiffs sought compensatory and punitive damages against the Metropolitan Airports Commission and Officers Baetz, Griller and Edblom.

Defendants moved for summary judgment on the grounds that Foster had not raised a genuine dispute over whether Officer Baetz lacked probable cause to arrest, a necessary element of a fourth amendment claim for unlawful arrest, and that Foster had not raised a genuine dispute over the reasonableness of the officers' use of force.

In the alternative, defendants moved for leave to amend their answer to assert a defense of qualified immunity based on Baetz's reasonable belief that he had probable cause to arrest Foster. In opposition to defendants' motion for summary judgment, Foster argued that while the facts may indicate Baetz had probable cause to arrest him for refusing to move his car, they also indicate that Baetz arrested Foster *not* for refusing to move his car but for talking back to the officer and tearing up the parking ticket, conduct which Foster argues is protected under the first amendment. Foster argued that Baetz's improper motive or bad faith in making the arrest defeats probable cause and renders the arrest unconstitutional.

Ruling from the bench, the district court granted defendants' motion for summary judgment on the constitutional claims, denied defendants' motion for leave to amend as moot, and dismissed plaintiffs' state law claims without prejudice. Without expressly deciding whether Baetz's motive was relevant, the court held that the arrest had "nothing to do with Foster tearing up the ticket," and, as a matter of law, Officer Baetz had probable cause to arrest Foster for refusing to move his car and interfering with his duty to keep traffic moving in violation of Minn.Stat. § 609.50, subd. 2. The court also held that, as a matter of law, the force used in making the arrest was reasonable under the circumstances.

We understand the predicament Foster was in when Baetz insisted he move his car. At the same time, we understand that Foster could have, and certainly in hindsight should have, left for the airport earlier and given himself enough time to park in the lot closest to the terminal building in order to help his wife and children into the airport. However, whether we believe Foster was right or wrong in sending his wife

---

**2.** At the time of Foster's arrest, this statute provided:

> Whoever intentionally obstructs, hinders or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense or interferes with a peace officer while the officer is engaged in the perform-

ance of official duties ... may be sentenced....

Violation of § 609.50 is a misdemeanor. In 1988, the statute was amended by adding the words "obstructs, resists or" immediately before the word "interferes." Act of April 21, 1988, ch. 584, § 1, 1988 Minn. Laws 610–11.

into the terminal to check her bags while he waited in the car rather than park the car in a designated lot cannot interfere with our legal analysis of the district court's decision to grant summary judgment for defendants on Foster's claim of unlawful arrest and excessive force. With this in mind, we begin our analysis.

UNLAWFUL ARREST

At the outset, we note that Foster's claim of unlawful arrest turns on whether Foster presented sufficient facts from which a reasonable juror could find that Baetz lacked probable cause to arrest him. If probable cause was indeed present, it is not necessary to consider an immunity defense. *Garionis v. Newton,* 827 F.2d 306, 309 n. 5 (8th Cir.1987); *Deary v. Three Unnamed Police Officers,* 746 F.2d 185, 192–93 (3d Cir.1984). The district court did not, therefore, decide whether, even if probable cause was lacking, Baetz reasonably believed the arrest was lawful such that he would be immune from damages resulting from his actions. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (if the officer did not violate clearly established statutory or constitutional rights of which a reasonable person would have known, the officer is immune from damages).

 The issue presented by this case, and the legal point on which the parties disagree, is whether Baetz's allegedly improper motive for arresting Foster is relevant to Foster's claim of unlawful arrest. Foster argues that he presented sufficient evidence to suggest that he was arrested for verbally abusing the officer and for

tearing up the parking ticket, and that if indeed those were the reasons for his arrest, Baetz acted in bad faith and lacked probable cause to arrest him.[3] Defendants, on the other hand, argue that the arresting officer's bad faith or improper motive, if any, is wholly irrelevant to the probable cause analysis and that because Baetz had probable cause to arrest Foster for refusing to move his car, Foster's claim is barred. Under the circumstances of this case, we agree with defendants that Baetz's subjective reason for arresting Foster is irrelevant to his fourth amendment claim.

Foster's arrest was prompted by a combination of acts, some of which gave Baetz probable cause to believe a crime had been committed (refusing to move his car) and some of which may be protected by the first amendment and therefore cannot constitute a violation of Minn.Stat. § 609.50 (tearing up the ticket and talking back to the officer). *See State v. Krawsky,* 426 N.W.2d at 877 (upholding § 609.50 against a first amendment challenge because it applies only to physical acts which substantially frustrate or hinder the officer's performance of his or her duties). Under these circumstances, we hold that Baetz's subjective reason for making the arrest is irrelevant to a fourth amendment challenge to the arrest. We find support for our decision in two cases, *Jureczki v. City of Seabrook,* 760 F.2d 666 (5th Cir.1985) (*Jureczki*), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986), and *Linn v. Garcia,* 531 F.2d 855 (8th Cir.1976).[4] In

---

**3.** Foster argues that his acts of tearing up the parking ticket and talking back to Baetz are protected by the first amendment and therefore cannot form the basis of a reasonable arrest under the fourth amendment. *See Texas v. Johnson,* —— U.S. ——, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (non-verbal conduct which is intended to convey a message and is non-violent is constitutionally protected); *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (the first amendment protects a significant amount of verbal criticism and challenge directed at police officers short of "fighting words").

**4.** We also find support for our decision in the recent Supreme Court case of *Graham v. Con-*

*nor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Although specifically deciding which standard governs a claim of excessive force, the Court suggested that all challenges to official conduct under the fourth amendment, including unlawful arrest, are governed by an "objectively reasonable" standard which leaves no room for consideration of the officer's subjective intentions or motives:

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Jureczki,* the plaintiff was arrested pursuant to a warrant after a criminal complaint had been filed against him for violating a city building code. On appeal from the district court's dismissal of his § 1983 complaint, the plaintiff argued that the arrest warrant was invalid because the building inspector acted maliciously in filing the complaint. The Fifth Circuit held that the inspector's malice in filing the complaint and obtaining the warrant was irrelevant where probable cause existed for plaintiff's arrest:

> A judge's determination of probable cause breaks the chain of causation and insulates the initiating party from liability. [E]ven if the officer seeking the warrant has acted maliciously in procuring these warrants, and even if that action results in false arrest, an intermediary's decision to issue a warrant insulates the malicious action from liability. If there exists probable cause at the time, the arrest is constitutional. The evil intent or bad faith of an officer in obtaining or executing a valid warrant cannot transmute an arrest made with probable cause into a section 1983 violation, just as an officer's good intent is irrelevant when he contravenes settled law.

*Jureczki,* 760 F.2d at 668–69 (citations omitted). Here, if Baetz had relayed Foster's conduct to a magistrate in an effort to obtain a warrant for Foster's arrest, a magistrate could have found probable cause to issue the warrant based on Foster's refusal to move his car. That there was other conduct described in the arrest warrant affidavit for which the magistrate could not have issued an arrest warrant would not have rendered the warrant invalid.

In *Linn v. Garcia,* 531 F.2d at 861, we held that the district court erred in submitting to the jury the issue of whether the officers lacked probable cause in arresting the plaintiff. Plaintiff was arrested and charged with resisting arrest, public drunkenness, disorderly conduct, and abusing a police officer. *Id.* at 857. The latter

charge was dropped, and, after a successful appeal of a judge's conviction on the remaining charges, the plaintiff was acquitted on all charges by a jury. *Id.* The plaintiff filed a § 1983 action for, *inter alia,* unlawful arrest and a jury awarded him damages. After finding that the officers were justified in arresting plaintiff for public drunkenness, *id.* at 861, we rejected the plaintiff's contention that the officers needed probable cause to believe he had committed or was committing all four offenses for which he was allegedly arrested:

> The arrest and detention of plaintiff was a single incident. In our view, when a peace officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well.

*Id.* at 862. The same reasoning applies here. If Baetz believed that Foster had committed a misdemeanor by refusing to move his car, and therefore had probable cause to arrest, it is immaterial that Baetz also thought, perhaps mistakenly, that he had probable cause to arrest Foster for verbally abusing him or tearing up the parking ticket.

■ We understand that in other cases it may be appropriate to consider the arresting officer's motive. In *Motes v. Myers,* 810 F.2d 1055 (11th Cir.1987) (*Motes*), a case relied upon by Foster, there was evidence to suggest that the arresting officer swore out the arrest warrant to coerce the plaintiff to settle a private disagreement between the officer and the plaintiff. The court held that an officer's misuse of the state warrant process to settle a private dispute is actionable under § 1983. *Motes,* 810 F.2d at 1060. An officer's reason for making an arrest may also be relevant when the claimant alleges that he was arrested for exercising his right to speak freely *and* there was no other basis to justify the arrest, *see Bailey v. Andrews,* 811 F.2d 366, 372 (7th Cir.1987), or when

*Graham,* 109 S.Ct. at 1872.

the claimant alleges that the arrest was motivated by racial animus, *see Hunt v. Jaglowski,* 665 F.Supp. 681, 683–84 (N.D. Ill.1987) (allegations that police acted with racial animus in making a warrantless arrest actionable under 42 U.S.C. §§ 1981, 1983). We also recognize that motive is relevant in a § 1983 action for malicious prosecution where one of the elements the claimant *must* prove in order to prevail is that charges were brought because of some personal animosity. *See Losch v. Borough of Parkesburg,* 736 F.2d 903, 907 (3d Cir.1984). Finally, we do not deny the possibility that Foster could have reached a jury if he had presented evidence that Officer Baetz had a reputation for arresting people because of some personal dislike for their noncriminal behavior or that the police department as a practice never made arrests at the airport and instead only ticketed cars that were illegally parked. In those circumstances, an arrest immediately following conduct protected under the first amendment may be actionable under § 1983. In other words, if a § 1983 claimant is able to prove a particular practice of arbitrary and discriminatory arrests, the subjective motive of the arresting officer may be relevant to show his or her conformity with that practice, even if another reasonable officer would have had probable cause to arrest. Foster, however, has presented no such evidence.

Foster has presented no evidence from which a reasonable juror could find that Officer Baetz lacked probable cause to believe that Foster was committing an offense under Minn.Stat. § 609.50 by refusing to move his car. *See Linn v. Garcia,* 531 F.2d at 861 (where the facts relevant to the probable cause determination are not disputed or are susceptible to only one reasonable inference, the question is one of the law for the court). At the time of his arrest, Minn.Stat. § 609.50 made it a crime to intentionally interfere with the duties of a peace officer. The facts are undisputed that Baetz had a duty to keep traffic moving on the upper level of the terminal building. The facts are also undisputed that Baetz knew Foster refused to move his car from the unloading zone.

Once Foster refused to move his car, Baetz had probable cause to believe Foster was committing a misdemeanor in his presence, and no reasonable juror could find otherwise. Therefore, we must affirm the district court's decision granting summary judgment for defendants on plaintiffs' claim of unlawful arrest.

## EXCESSIVE FORCE

Foster argues that the district court was incorrect in holding, as a matter of law, that the force used by Officers Baetz, Edblom and Griller in making the arrest and by Officers Baetz and Edblom in detaining Foster for two hours was unreasonable under the circumstances. In addressing Foster's argument, we must consider whether the evidence, viewed in a light most favorable to Foster, raises any genuine dispute as to the reasonableness of the force used. *See Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986). If the evidence, viewed in a light most favorable to Foster, is such that a reasonable jury could return a verdict in his favor, summary judgment was not proper. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The Supreme Court has made it clear that "*all* claims that law enforcement officers have used excessive force … in the course of an arrest … of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original). The question for the jury is whether, judging from the perspective of a reasonable officer at the scene of the arrest, the totality of the circumstances justifies the use of the force used. *Id.* 109 S.Ct. at 1872. Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct. *Id.* " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

■ Foster's allegations of excessive force prior to his wife's return to the car are easily disposed of. Although we understand why Foster initially resisted Baetz's request that he get out of the car (his fear that his son would be left unattended), the officer's use of force in pulling Foster from the car and handcuffing him was reasonable under the circumstances, and no juror could reasonably find otherwise.[5] *See Gassner v. City of Garland,* 864 F.2d 394, 400 (5th Cir.1989) (resistance justified use of force); *Agee v. Hickman,* 490 F.2d 210, 212 (8th Cir.) (force can be used to overcome physical resistance), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974).

■ The officers' use of force after they successfully pulled Foster from the car is a closer question, but one we believe was also properly decided at the summary judgment stage of the proceeding. Although we must assume, based on Foster's testimony, that Foster was not resisting arrest at this time, the force used, including handcuffs, was not so unreasonable to give rise to a constitutional claim of excessive force under the fourth amendment. First, although Foster did testify that he was pushed against a wall twice on the way to the holding area, he also testified he sustained no injury as a result of being pushed. *Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir.1985) (extent of injury relevant to reasonableness of force used); *cf. Raley v. Fraser,* 747 F.2d 287, 289 (5th Cir.1984) (minor bruises and scrapes were not severe injuries "grossly disproportionate to the need for action"). Second, to the extent that Foster suggests the officers' rough conduct towards him was in retaliation for his tearing up the parking ticket, we note that after the Supreme Court's

decision in *Graham v. Connor,* 109 S.Ct. at 1872–73, the officers' evil intentions, assuming Foster could establish them at trial, are not relevant to a fourth amendment claim of excessive force.

■ Finally, we turn to Foster's allegations that the handcuffs were unnecessary and were applied too tightly around his wrists. Foster claims that he has suffered nerve damage in his arms as a result of being in handcuffs. However, again, Foster presents no medical records indicating he suffered any long-term injury as a result of the handcuffs. *See Hannula v. City of Lakewood,* 907 F.2d 129, 132 n. 3 (10th Cir.1990) (plaintiff did not offer any medical records to support allegations of nerve damage as a result of being handcuffed too tightly); *cf. Van Houten v. Baughman,* 663 F.Supp. 887, 891 (C.D.Ill. 1987) (numbness in wrists arising from handcuffs does not rise to the level of severity as to shock the conscience of the court).

We do not believe that Foster's allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force. This view is not inconsistent with our decision in *Bauer v. Norris,* 713 F.2d 408 (8th Cir.1983), a case decided when the officer's motive in making the arrest and using force was still relevant to a claim of excessive force. *See Graham v. Connor,* 109 S.Ct. at 1872–73. In *Bauer,* we upheld the plaintiffs' jury verdict on their claim of excessive force, which included the use of handcuffs, because "the record ... support[s] a conclusion by the jury that either the use of *any* force by [the officer] in the course of his encounter and arrest of [the plaintiffs] was unreasonable or the [officer] used force not to perform his lawful duty, but for some other improper purpose." 713 F.2d at 413. Here, Foster must concede that some force was objectively reasonable due to his earlier display of resistance. Although in hind-

---

**5.** During his deposition, Foster testified he suffered permanent injury to his arms and shoulder as a result of being pulled from the car and handcuffed. Although Foster did not supple- ment the record with medical records, defense counsel indicated that the medical records reveal that Foster suffered a mild shoulder strain.

sight such force might not have been necessary, we are not here to judge the officer's conduct from hindsight, but rather to place ourselves in the shoes of a reasonable officer under the circumstances. *See Graham v. Connor,* 109 S.Ct. at 1872.

We hold that the district court was correct in finding, as a matter of law, that the officers' conduct was reasonable under the circumstances. Accordingly, the judgment of the district court is hereby

Affirmed.