**Jeffrey BEECH, Plaintiff,**

v.

**CITY OF MOBILE, et al., Defendants.**

**No. CV–92–0490.**

United States District Court,
S.D. Alabama,
Southern Division.

Feb. 10, 1994.

Kenneth A. Nixon, David A. Nihart, Richard M. Beckish, Jr., Mobile, AL, for plaintiff.

K.W. Michael Chambers, Mark L. Redditt, John R. Lockett, Mobile, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUTLER, Chief Judge.

This matter is before the Court on two motions for summary judgment—one on behalf of the individual defendants Marshall K. Freeman, R. Grant Chambless and John Molyneux (doc. # 26) and one on behalf of the City of Mobile (doc. # 24). After reviewing these motions, the disputed and undisputed facts and the applicable law, the Court finds that the motion filed by the individual defen-

dants is due to be denied but that the motion filed by the City of Mobile is due to be granted.

### I. Factual Background [1]

This action arises from an incident that occurred on the evening of February 19, 1992. Plaintiff Jeffrey Beech and his wife were in downtown Mobile to attend a Mardi Gras parade. They were waiting on a street corner where they were to meet Mrs. Beech's sister when they were approached by a person who appeared to be a vagrant. Because the street they were on was not on the parade route there were few, if any, people around.

The "bum" was staggering and appeared to be intoxicated. He was carrying a beer can in one hand and had his free hand in his pocket. The "bum" came within a few feet of Beech and asked him for money. Beech told him that he did not have any money, and Beech and his wife retreated several feet. The "bum" again approached the Beeches and asked for money. This time Mr. Beech told the "bum", "Homey don't play that," meaning that he would not give him any money. Again, Beech and his wife moved several feet away. The third time the "bum" approached and asked Beech for money, Beech told him to "go on; leave me alone." The "bum" just stood there and looked at Beech. Beech then pushed his wife back behind him, raised his fist and may have said, "Get the hell out of here."

At that point, two undercover officers from the Mobile Police Department, defendants Molyneux and Chambless, promptly grabbed Beech and arrested him for "assaulting a police officer." Unbeknownst to Beech, the "bum" was actually an undercover police officer, defendant Freeman. Beech was handcuffed, placed in the paddy wagon and eventually taken off to jail where he was charged with harassment. He was released on bond later that evening. The harassment charge was later dismissed.

The police officers were part of an undercover operation known as "Operation Shad-

---

1. Because the facts must be considered in the light most favorable to the nonmoving party, *see* Part II. A., *infra,* the Court has relied on plaintiff's recitation of the facts.

ow", the purpose of which was to reduce crimes against persons in downtown Mobile immediately before, during and after Mardi Gras parades. Police officers were divided into surveillance teams comprised of five or six officers, including one or two "decoys" per team. The "decoys" were either to stay in a fixed location with surveillance team members nearby or stroll side streets with surveillance team members leading and trailing them. The crimes targeted by the operation were assault, menacing, reckless endangerment, robbery and purse-snatching.

Prior to the implementation of Operation Shadow, team leaders participated in a meeting where they were give a copy of the operational plan and were briefed on the method of operation by Capt. Thomas Calhoun, the commanding officer in charge of Operation Shadow. Decoys were to portray certain types of people who had been victimized at Mardi Gras parades in previous years in order to "create an opportunity for the decoy officers to be victimized." Dep. of Thomas L. Calhoun at 28.

## II. Legal Discussion

As a result of these events, Beech filed the instant action against the individual police officers who arrested him and against the City of Mobile. The complaint alleges a federal-law cause of action under 42 U.S.C. § 1983 against both the individual police officers (Count One) and the City (Count Two), as well as state-law causes of action for false imprisonment (Count Three), assault and battery (Count Four) and violation of the Alabama constitution (Count Five). This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. Because the individual defendants and the City have raised different issues in their motions for summary judgment, these motions will be discussed separately. Before addressing the issues raised by each motion, it is instructive to review the analytical framework to be used in deciding motions for summary judgment.

2. For purposes of brevity, the individual defendants will be referred to in this section simply as

### A. Summary Judgment Analysis

■ Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of pointing out "the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). When the nonmoving party has the burden of proof at trial, the moving party may discharge his initial responsibility either by filing supporting affidavits or other evidence or by simply pointing out the absence of evidence to support the nonmoving party's case. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991). When the moving party bears the burden of proof at trial, **"that** party must show **affirmatively** the absence of a genuine issue of material fact [and] 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* at 1438.

■ Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* at 1438 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (footnote omitted).

### B. Individual Defendants [2]

The individual police officers contend that they are entitled to summary judgment on the § 1983 claim because they are shielded from liability by the doctrine of qualified immunity and because they did not violate any of plaintiff's constitutional rights. In addition, they contend that they are entitled to summary judgment on the state law claims

"defendants".

of false imprisonment, assault and battery and violation of plaintiff's rights secured by the Alabama constitution.

### 1. § 1983—Qualified Immunity

■ It is well-settled that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Eleventh Circuit has set forth the following allocation of proof to be followed when a defendant raises a qualified immunity defense:

1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)).

■ In order for defendants to prove that they were acting within the scope of their discretionary authority, "there must be more than a bald assertion ... that the complained-of actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] discretionary authority; there must be a showing by competent summary judgment materials of objective circumstances that would compel that conclusion." *Barker v. Norman,* 651 F.2d 1107, 1124–25 (5th Cir.Unit A 1981). For instance, police officers might rely on standard operating procedures contained in their police manuals. *Id.* at 1125 (quoting *Landrum v. Moats,* 576 F.2d 1320, 1327 n. 14 (5th Cir.), cert. denied, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978)).

■ In their brief in support of the motion for summary judgment, defendants devote no discussion to this issue other than their conclusory statement that they "were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred." Defts.' Proposed Determinations of Uncontroverted Facts and Conclusions of Law at p. 7.[3] The only evidence offered in support of this conclusion is the defendants' affidavits, which also merely state the conclusion rather than citing evidence on which the conclusion is based. Each affidavit states, in relevant part: "All of my activities on the night in question involving the decoy operation, including the incident involving the arrest and detainment of Jeffrey Beech were within the scope of my discretionary authority as a police officer with the City of Mobile." Affs. of Chambless, Freeman and Molyneux. Consequently, the Court finds that the defendants have failed to meet their burden of proving that they acted within the scope of their discretionary authority.[4]

■ Even assuming, *arguendo,* that defendants passed the first prong of the *Zeigler* test, they would nevertheless fail the second. The second prong of the qualified immunity test focuses on the objective legal reasonableness of the defendants' conduct. *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991). The issue is " 'whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred.' " *Swint v. City of Wadley,* 5 F.3d 1435, 1441–42 (11th Cir.1993) (quoting *Har-*

---

**3.** Rather than submit a separate brief in support of their motion, defendants adopted their Proposed Determinations of Uncontroverted Facts and Conclusions of Law as their brief. See Doc. # 27.

**4.** It may be that defendants can prove that their actions were within the scope of their discretionary authority. However, it is not incumbent upon the Court to create from a devoid record proof of defendants' affirmative defense. Because the defendants have not met their burden, the Court offers no opinion on the merits of plaintiff's argument that defendants' actions were outside the scope of the discretionary authority because they were illegal.

*din v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992)).

At the time of plaintiff's arrest, it was clearly established that "a person has the right not to be arrested unless probable cause justifies the arrest." *Motes v. Myers,* 810 F.2d 1055, 1059 (11th Cir.1987). Although the Court may not rely on "broad legal generalities when considering whether conduct crosses the line from the lawful to the unlawful", it is not necessary that "some prior court has expressly [held the specific conduct at issue to be unconstitutional] on materially similar facts.'" *Cannon v. Macon County,* 1 F.3d 1558, 1564–65 (11th Cir.1993) (quoting *Greason v. Kemp,* 891 F.2d 829, 834 n. 10 (11th Cir.1990)). In other words, it is not necessary for a court to have held, prior to the incident, that an officer did not have probable cause to arrest under similar circumstances, as long as it is evident from existing law that there was no arguable probable cause.

For purposes of qualified immunity, the question is not whether there was in fact probable cause, but rather whether there was arguable probable cause.[5] *Moore v. Gwinnett County,* 967 F.2d 1495, 1497 (11th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). That is, could a reasonable officer under the circumstances have believed he had probable cause to make an arrest? The answer in this case is an emphatic "no".

The plaintiff was charged with harassment in violation of Ala.Code § 13A–11–8 (1975) which states, in relevant part:

(1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

. . . . .

(b). Directs abusive or obscene language or makes an obscene gesture towards another person.

It is inconceivable to the Court that an officer under these circumstances could reasonably have believed that the plaintiff had the intent to harass, annoy or alarm Officer Freeman.

When the arrest occurred, plaintiff had been approached three times in succession by a "bum" whom he had three times refused to give money. Plaintiff had some cause for concern since there were few people around, the "bum" kept one hand in his pocket as though he could have a weapon and refused to leave plaintiff and his wife alone. Although there is a paucity of cases interpreting the Alabama harassment statute, common sense dictates that one who yells or even curses in an attempt to protect himself from the annoying or threatening conduct of another does not have the requisite intent to "harass, annoy or alarm".

Moreover, the language used by plaintiff was not "abusive or obscene" as those terms have been defined by the Alabama courts. A violation of the harassment statute requires the use of "abusive or obscene language" which Alabama courts have construed narrowly to "appl[y] only to 'fighting words.'" *Shinault v. City of Huntsville,* 579 So.2d 696, 699 (Ala.Cr.App.1991) (Bowen, J., concurring). "Fighting words" are "those words which have a likelihood of causing a violent response by the person to whom they are addressed ... [and] are calculated to cause an immediate breach of the peace. It is not enough that the words merely arouse anger." *Swann v. City of Huntsville,* 455 So.2d 944, 950 (Ala.Cr.App.1984) (quoting *Skelton v. City of Birmingham,* 342 So.2d 933, 936–37 (Ala.Cr.App.), *remanded* 342 So.2d 937 (Ala.1976)). The statement made by plaintiff, "Get the hell[6] out of here," could not be calculated to cause a breach of the peace since it was an attempt to avoid, not provoke, a confrontation.

**5.** Probable cause exists where the facts and circumstances within an officer's knowledge, based on reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Courson,* 939 F.2d at 1488 n. 16 (11th Cir.1991).

**6.** Plaintiff admits that he might have used another curse word, but the precise word used is immaterial.

### 2. § 1983—Substantive Claims

■ In response to the motion for summary judgment, plaintiff concedes that all of the constitutional deprivations alleged in the complaint, including allegations of unlawful search and the use of excessive force, are premised on his contention that the arrest was unlawful because it was not supported by probable cause. The use of force and a search incident to arrest can be considered as elements of damage in a § 1983 action based on an arrest without probable cause. *Motes v. Myers,* 810 F.2d 1055, 1060 (11th Cir.1987). Consequently, the only issue is whether, viewing the facts in the light most favorable to the plaintiff, the defendants had probable cause to arrest Beech.

■ Whether probable cause exists is a "pure question of law." [7] *Swint,* 5 F.3d at 1443. Defendants contend that they should be granted summary judgment because they had probable cause to arrest Beech. It stands to reason that since the Court has found, for the reasons discussed in Part II. B. 1., *supra,* there was no **arguable** probable cause, then there could be no actual probable cause.

### 3. State-Law Claims

Defendants argue that plaintiff's claim for false arrest fails because they had probable cause to make the arrest. Similarly, they claim that they could not be liable for assault and battery because any force used on the defendant was incident to a lawful arrest. However, since the Court has found that the facts alleged by plaintiff do not support a finding of probable cause, defendants are not entitled to summary judgment on these issues.

■ Finally, defendants argue that plaintiff's claim based on unspecified violations of state law and the Alabama Constitution should be stricken for failure to meet the pleading requirements of Fed.R.Civ.P. 8 because the claim is vague and conclusory. In response, plaintiff states that the claims he is asserting under the Alabama Constitution are based on Amendments IV and XIV to Alabama Constitution and are identical to his claims under the United States Constitution and § 1983. Although the Court agrees that the complaint is rather vague, defendants will suffer no prejudice if these claims are allowed to remain.

### C. City of Mobile

#### 1. § 1983

The Supreme Court has held that an employer is liable for the acts of its employees under § 1983 only if the employees actions were taken pursuant to a policy or custom adopted by the employer. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In this case, the City of Mobile contends that it is not liable because plaintiff's alleged constitutional deprivation was not the result of any city policy or custom. Plaintiff argues that the City is liable because it "fail[ed] to properly train and supervise the defendant police officers in how to implement their appointed roles in 'Operation Shadow'." Pltf.'s Br. at 24.

■ In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that a city's failure to train its police officers can amount to a policy or custom "[o]nly where [the failure to train] evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* at 389, 109 S.Ct. at 1205. Thus, in order to establish the City's liability under *Canton,* the plaintiff must prove:

(1) that the City in fact inadequately trained its employees in the lawful execution of their duties; and

(2) that this failure to train was actually a city policy, *i.e.,* that the failure to train amounted to deliberate indifference.

*Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1555 (11th Cir.1989). Plaintiff has failed to meet his burden of proof as to either of these elements.

■ The adequacy of the training must be evaluated in light of the task to be performed. *Canton,* 489 U.S. at 390, 109

---

7. It does not appear that there is much dispute as to the material facts in this case, at least with respect to the existence of probable cause. Defendants' proposed Determination of Undisputed Facts are based, in large part, on plaintiff's deposition testimony.

S.Ct. at 1205. Significantly, plaintiff does not allege that overall police training was inadequate. Instead he argues that the training was inadequate because the City failed to provide training specifically for Operation Shadow. In essence, plaintiff argues that if the police officers had been properly trained they would not have done what they did. It is not enough, however, "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391, 109 S.Ct. at 1206.

■ The only "proof" offered by plaintiff to support his argument that training was inadequate is the operational plan itself. Yet the plan shows that the officers were not merely sent out into the streets and told to make arrests. The plan targeted specific types of crime in a specific area and instructed the officers in how their assignment was to be carried out. Moreover, the police officers carrying out the operation presumably had some training and experience regarding when and how to make an arrest. Training cannot be labeled inadequate simply because it does not cover every conceivable situation.[8]

■ Even assuming, *arguendo*, that training was inadequate, plaintiff has failed to prove that the failure to train was the result of deliberate indifference on the part of the City. Deliberate indifference has been defined as "a strong likelihood rather than a mere possibility" that a constitutional deprivation will result from a defendant's failure to act. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir.1990). "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

need." *Canton,* 489 U.S. at 390, 109 S.Ct. at 1205 (footnote omitted).

In *Canton* the Supreme Court gave two illustrations of hypothetical situations where failure to train would amount to deliberate indifference.

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
>
> It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*Id.* at n. 10. This case presents neither of these situations.

It was not plainly obvious that the plan would result in arrests of citizens without probable cause. This is a far cry from *Canton* where the jail supervisors were given the authority to determine when detainees should be given medical attention but were given no training as to how to make that determination. As discussed above, plaintiff does not argue that police officers had no training in how to make an arrest. He argues that they had no training in how to carry out their undercover roles.

Plaintiff argues that this case is more like the second illustration in *Canton* because another similar incident occurred which resulted in the arrest of a citizen for harassment. The fallacy in plaintiff's argument is that these two incidents involving the same officers happened on the same night, and

---

**8.** A review of cases where training was found to be inadequate also supports the conclusion that the training in this case was adequate. For example, both *Canton* and *Rivas v. Freeman,* 940 F.2d 1491 (11th Cir.1991), involved situations where supervisors were given discretion to make important decisions likely to affect detainees' constitutional rights without **any** training as to

how to make those decisions. In *Kerr* training was found to be inadequate because there was evidence that the police department's canine unit received less training than canine units in other cities, that the canine unit resorted to force more often than other canine units and that the unit often used excessive force to apprehend persons suspected of minor misdemeanors.

when the supervisor in charge of the operation learned what happened, he "instructed that no team use this type decoy role." Pltf.'s Brf., Ex. B. It is difficult to see how immediate remedial action can be equated with deliberate indifference. *Cf. Kerr*, 875 F.2d at 1556–57 (deliberate indifference where acting police chief knew about problems with canine unit's use of excessive force and failed to take any action).

### 2. State-Law Claims

■ Plaintiff does not respond to the City's argument that it is immune from liability with respect to the pendent state-law claims. Under Alabama law a municipality is immune from liability for claims such as these. *See* Ala.Code § 11–47–190 (1975); *Boyette v. City of Mobile*, 442 So.2d 61 (Ala. 1983) (no cause of action against city for false arrest and imprisonment). Accordingly, summary judgment is due to be granted in favor of the City as to plaintiff's claims for false arrest, assault and battery and violation of the Alabama constitution.

### III. Conclusion

Viewing the facts in the light most favorable to the plaintiff, the Court is persuaded that the individual defendants are not entitled to summary judgment on the issue of qualified immunity nor are they entitled to summary judgment on any other ground. However, because plaintiff has failed to offer sufficient proof that the alleged constitutional deprivation was the result of any policy or custom of the City and has failed to offer any proof that the City should be held liable on any state-law claim, the Court finds that the City is entitled to summary judgment as to all claims against it.

Accordingly, it is **ORDERED** that the motion for summary judgment filed by defendants Freeman, Chambless and Molyneux be and hereby is **DENIED**. It is **FURTHER ORDERED** that the motion for summary judgment filed by the City of Mobile be and hereby is **GRANTED**.