# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2849

_____

| | | |
|---|---|---|
| Richard Goff, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Lloyd Bise, Individually and in his | * | Appeal from the United States |
| official capacity as Mayor of the town | * | District Court for the |
| of Vilonia, Arkansas; Shane Shoemake, | * | Eastern District of Arkansas. |
| Individually and in his official capacity | * | |
| as Chief of Police of the Police | * | |
| Department of Vilonia, Arkansas; | * | |
| City of Vilonia, Arkansas, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: February 10, 1999
Filed: April 6, 1999

_____

Before BOWMAN, Chief Judge, FAGG, and HANSEN, Circuit Judges.

_____

BOWMAN, Chief Judge.

Alleging violations of 42 U.S.C. § 1983, Richard Goff sued Lloyd Bise, the mayor of Vilonia, Arkansas; Shane Shoemake, the Vilonia chief of police; and the City

of Vilonia. The District Court[1] denied the defendants' motion for summary judgment based on qualified immunity, and the case was tried to a jury. Mr. Goff's claims against the City were not submitted to the jury, but the jury determined that Mayor Bise and Chief Shoemake had violated Mr. Goff's Fourth Amendment rights by arresting him without probable cause and by using excessive force when making the arrest. The District Court entered judgment on the jury's verdict. All three defendants appeal, arguing they were entitled to summary judgment based on qualified immunity. Mayor Bise and Chief Shoemake also argue that the District Court erred when it denied their motion for judgment as a matter of law and made certain evidentiary and instructional rulings. We affirm.

I.

Lloyd Bise, the mayor of Vilonia, Arkansas, and Richard Goff, a Vilonia resident, met in 1978 and for many years were friends and business associates. In February 1996, however, Mr. Goff began to suspect that his wife, Joyce Goff, was having an affair with Mayor Bise. Mr. and Mrs. Goff subsequently divorced, and the relationship between Mr. Goff and Mayor Bise deteriorated. This led to a number of confrontations, including one on August 12, 1996, that gave rise to this lawsuit. The parties dispute much of what occurred on August 12, but the jury's verdict resolved these disputes in Mr. Goff's favor. We therefore summarize the evidence in the light most favorable to the jury verdict. See Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 494 (8th Cir. 1998).

On August 12, Mr. Goff was driving through Vilonia when he saw Mayor Bise standing outside City Hall. Mayor Bise made an obscene gesture at Mr. Goff and taunted Mr. Goff about the affair the mayor was having with Mr. Goff's wife. Angered,

---

[1]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

Mr. Goff turned his truck around and followed Mayor Bise, who got into his own truck and drove to the Vilonia post office.

At the post office, Mayor Bise remained in his truck while mailing some letters. Mayor Bise then attempted to depart, but Mr. Goff pulled his truck across the driveway, blocking Mayor Bise's path. The two men began arguing. During this argument, Mr. Goff got out of his truck, approached Mayor Bise's truck, and attempted to confront the mayor. Mayor Bise refused to get out of his truck. Instead, Mayor Bise tried to turn his truck around, almost running over Mr. Goff in the process. Mr. Goff then drew his pocket knife and, without opening the blade, banged it on the window of Mayor Bise's truck. The banging and arguing continued until Mayor Bise succeeded in turning around his truck and drove away. Mr. Goff then returned to his truck and drove to his daughter's house, located a short distance from the post office, to calm down and visit his granddaughter.

After leaving the post office, Mayor Bise used a police radio installed in his truck to locate the Vilonia police officer on duty. Learning that the officer, Chief of Police Shane Shoemake, was at a nearby store, Mayor Bise stopped at the store and asked Chief Shoemake to speak with Mr. Goff regarding the confrontation. Chief Shoemake then drove his police car to the post office, discovered that Mr. Goff had just departed, and followed Mr. Goff to Mr. Goff's daughter's house.

Arriving at Mr. Goff's daughter's house, Chief Shoemake saw that Mr. Goff had parked in the driveway and was walking toward the house. Chief Shoemake parked behind Mr. Goff's truck, got out, and asked Mr. Goff about the incident at the post office. Mayor Bise then drove up, and Mr. Goff and Mayor Bise resumed their argument. Mayor Bise accused Mr. Goff of damaging his truck and ordered Chief Shoemake to arrest Mr. Goff. In response, Mr. Goff circled Mayor Bise's truck, demanding to know the location of the damage.

Chief Shoemake interrupted this argument and told Mr. Goff that he was under arrest. Mr. Goff demanded to know the grounds for the arrest, and Chief Shoemake responded that he saw Mr. Goff jab his hand through the passenger window of Mayor Bise's truck and attempt to poke Mayor Bise in the eyes. Chief Shoemake then told Mr. Goff to put his arms behind his back and to stand against the police car. According to Mr. Goff, he did not resist Chief Shoemake's efforts to arrest him. Nevertheless, when Mr. Goff was standing against the police car, Chief Shoemake invited or allowed Mayor Bise to assist in effecting the arrest.[2]

Mayor Bise took Chief Shoemake's handcuffs and fastened the first cuff around Mr. Goff's wrist so tightly that it pinched a nerve and drew blood. Feeling his hand go numb, Mr. Goff complained to Chief Shoemake that the handcuff was too tight. When Chief Shoemake did not answer, Mr. Goff turned and saw that Mayor Bise, not Chief Shoemake, had fastened the handcuff. Mr. Goff kicked at Mayor Bise, and Mayor Bise pulled on the handcuffs' chain, swinging Mr. Goff around and throwing him to the ground. The fall aggravated injuries Mr. Goff previously had suffered to his back and shoulder. Mayor Bise and Chief Shoemake then pinned Mr. Goff to the ground, and Mayor Bise choked Mr. Goff until he temporarily lost consciousness.

Mayor Bise fastened the second handcuff to Mr. Goff's wrist before Mr. Goff regained consciousness. Chief Shoemake then loaded Mr. Goff into the police car and transported Mr. Goff to a county jail. Along the way, Chief Shoemake reportedly made a number of unnecessary stops and refused to give Mr. Goff medical treatment or loosen the handcuff on Mr. Goff's wrist.

---

[2]The record indicates that, although he did not have any law enforcement training, Mayor Bise was deputized and sometimes assisted Vilonia police officers in performing their duties, including making arrests and controlling unruly suspects.

Mr. Goff was charged with assault, disorderly conduct, and resisting arrest because of his actions during the August 12 incident at his daughter's house. Acquitted on all charges, he filed the present § 1983 action. Mayor Bise and Chief Shoemake disputed Mr. Goff's account of the events on August 12, in particular Mr. Goff's claims that he did not assault Mayor Bise and that he did not resist arrest. All three defendants filed for summary judgment based on qualified immunity, but the District Court determined there were genuine issues of fact material to the qualified-immunity claim and denied the motion. The case was tried to a jury, which rejected Mayor Bise and Chief Shoemake's version of the events on August 12 and awarded Mr. Goff $12,000 in compensatory damages against the two defendants jointly; $100,000 in punitive damages against Mayor Bise; and $2000 in punitive damages against Chief Shoemake. The District Court entered judgment on this verdict. Mayor Bise, Chief Shoemake, and the City of Vilonia (although there is no judgment against it) all appeal.

II.

Mayor Bise and Chief Shoemake first contend that the District Court erred when it denied them summary judgment based on qualified immunity on Mr. Goff's claims that they arrested him without probable cause and used excessive force during the arrest.[3] The parties disagree whether this issue is properly before the Court. We hold that it is. Normally this Court will not review the denial of a motion for summary judgment after a trial on the merits. See Cowan v. Stafford R-VI Sch. Dist., 140 F.3d 1153, 1157 (8th Cir. 1998); Metropolitan Life Ins. Co. v. Golden Triangle, 121 F.3d 351, 353-54 (8th Cir. 1997). However, a district court's denial of summary judgment

---

[3]Mayor Bise and Chief Shoemake also appeal the District Court's denial of their motion for summary judgment on qualified immunity grounds on a claim that they illegally detained Mr. Goff prior to his arrest. No judgment was entered against Mayor Bise and Chief Shoemake on such a claim, so the issue is moot. Therefore, we decline to consider it. For the same reason, we decline to consider the City of Vilonia's appeal of the District Court's denial of summary judgment on the basis of qualified immunity.

based on qualified immunity is an exception, and is reviewable after a trial on the merits. See Littlewind v. Rayl, 33 F.3d 985, 986 (8th Cir. 1994) (stating that a defendant is not required to appeal immediately a denial of summary judgment based on qualified immunity to preserve the qualified-immunity issue on appeal); McIntosh v. Weinberger, 810 F.2d 1411, 1431 n.7 (8th Cir. 1987) (concluding a defendant did not surrender his qualified immunity defense by failing to appeal it immediately), vacated and remanded on other grounds sub. nom. Turner v. McIntosh, 487 U.S. 1212 (1988). Therefore, the issue of qualified immunity is properly before us. The standard of review is de novo. See Liebe v. Norton, 157 F.3d 574, 576 (8th Cir. 1998).

> To withstand a motion for summary judgment on qualified immunity grounds,

> a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right.

Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 117 S. Ct. 518 (1996). Mr. Goff's complaint states that Mayor Bise and Chief Shoemake arrested him without probable cause and used excessive force when making the arrest. Both of these claims allege violations of constitutional rights that were clearly established at the time of the August 12 arrest. See Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) ("The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person."); Habiger, 80 F.3d at 295 (stating that a person has "a clearly established right under the Fourth Amendment not to be arrested unless there [is] probable cause for [the] arrest"). Moreover, given the particular circumstances shown by the summary-judgment record, we believe Mr. Goff was entitled to survive summary judgment on the defendants' qualified-immunity claim.

Reviewing the evidence that was before the District Court when it denied the defendants' motion for summary judgment, we conclude that Mr. Goff had created a number of genuine issues of material fact regarding whether Mayor Bise and Chief Shoemake should have known that their conduct violated these clearly established constitutional rights. Mr. Goff had submitted evidence tending to support his allegations that Mayor Bise and Chief Shoemake arrested Mr. Goff not because they had probable cause to believe he had committed a crime, but because of Mayor Bise's personal animosity toward Mr. Goff.[4] Mr. Goff also had submitted evidence, including eyewitness and medical testimony, that Mayor Bise and Chief Shoemake used unnecessary and excessive force during the arrest, and that Mr. Goff suffered injuries as a result of this force. Although Mayor Bise and Chief Shoemake disagreed with Mr. Goff's account, and offered evidence tending to support a contrary conclusion, the state of the record was such that the District Court was correct when it declined at the summary judgment stage to hold the defendants entitled to qualified immunity. See Arnott v. Mataya, 995 F.2d 121, 124 (8th Cir. 1993) (stating that summary judgment based on qualified immunity is inappropriate "[i]f the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would not be justified in making an arrest"). Therefore, we find the District Court did not err when it denied Mayor Bise and Chief Shoemake's motion for summary judgment based on qualified immunity on Mr. Goff's illegal-arrest and excessive-force claims.

---

[4]Mayor Bise and Chief Shoemake assert that there was undisputed evidence they had probable cause to arrest Mr. Goff because Mr. Goff never expressly denied their allegations that he had assaulted Mayor Bise. After our review of Mr. Goff's response to the defendants' motion and the materials that were before the District Court when it ruled on the summary judgment motion, we conclude that Mr. Goff adequately disputed the defendants' allegations that Mr. Goff had attempted to poke Mayor Bise in the eyes.

III.

Mayor Bise and Chief Shoemake also assert that the District Court erred when it denied them judgment as a matter of law on Mr. Goff's excessive-force claim. This Court will affirm the District Court's denial of a motion for judgment as a matter of law unless, after reviewing de novo all the evidence in the light most favorable to the non-moving party, we determine that no reasonable juror could have returned a verdict in the non-moving party's favor. See Cox, 163 F.3d at 495-96.

Police officers are liable for the use of excessive force when they use force that is not objectively reasonable in light of the facts and circumstances confronting them. See Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)). In reviewing whether a plaintiff has made the requisite showing, this Court will "pay close attention to the particular facts," including the severity of the suspected crime, whether the suspect posed an immediate threat to the officer or others, and whether the suspect was actively resisting arrest. See id.

Reviewing the record in this manner, we find that a reasonable juror could determine that the force Mayor Bise and Chief Shoemake used was not objectively reasonable. A reasonable juror could believe that Mr. Goff was not suspected of any crime when he was arrested, but was arrested because Mayor Bise, acting on personal animosity, ordered Chief Shoemake to arrest him. A reasonable juror also could believe Mr. Goff's testimony that he did not resist Chief Shoemake's efforts to arrest him, but struggled and fought only after he realized that it was Mayor Bise--the man whom Mr. Goff suspected of having an affair with Mrs. Goff and with whom Mr. Goff had been arguing--who had placed the handcuff on his wrist so tightly that it pinched a nerve and drew blood. In addition, Mr. Goff offered evidence indicating the following: that this was the first time Mayor Bise had ever handcuffed an arrestee; that Chief Shoemake invited or permitted Mayor Bise, Mr. Goff's adversary, to participate in making the arrest; and that Mr. Goff's bad shoulder and bad back made it unlikely

-8-

that Mr. Goff would have wrestled with Chief Shoemake, a personal friend to Mr. Goff. Finally, a juror could reasonably believe Mr. Goff's testimony that at the time of the arrest, he posed a threat to no one: Mr. Goff testified that he was walking up the driveway to his daughter's house, intending to visit his granddaughter, when Mayor Bise arrived, began arguing with Mr. Goff, and demanded that Chief Shoemake arrest Mr. Goff.

When the force used by Chief Shoemake and Mayor Bise is considered in light of these circumstances, a juror could reasonably conclude that it was excessive. Mr. Goff testified that he was painfully handcuffed, thrown to the ground, pinned by two law enforcement officers, and choked into unconsciousness. A reasonable juror could credit this evidence and determine that this force was excessive when applied to a person whom the juror reasonably believed committed no crime, posed a threat to no one, and resisted only when his personal adversary was permitted to inflict pain upon him while illegally arresting him under color of law. Therefore, we affirm the District Court's denial of Mayor Bise and Chief Shoemake's motion for judgment as a matter of law on the excessive-force claim.

In their brief, Mayor Bise and Chief Shoemake argue that they cannot be held liable for an excessive use of force because Mr. Goff did not suffer sufficient injuries. This Court repeatedly has refused to establish the threshold level of injury a person must suffer before officers may be held liable for using excessive force. See, e.g., Curd v. City Court of Judsonia, 141 F.3d 839, 841-42 n.6 (8th Cir.), cert. denied, 119 S. Ct. 204 (1998); Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995). In the present case, we again do not need to decide whether some minimum level of injury is required, because--whatever that minimum level might be--we have no difficulty in concluding as a matter of law that Mr. Goff's injuries were sufficient to support an excessive-force claim. The evidence shows that Mr. Goff suffered significant physical injuries, including a torn rotator cuff and scarring and nerve damage to his left hand, that required $11,954.24 in medical treatment. Mr. Goff sought compensatory damages in

this amount, and the jury awarded him $12,000 in compensatory damages. The damage award indicates the jury agreed that Mr. Goff had suffered substantial injuries as Mr. Goff and his experts testified. Therefore, while we do not here establish the minimum threshold of injury a plaintiff must suffer, we find that the injuries Mr. Goff suffered clearly suffice to support the defendants' liability. Cf. Dawkins, 50 F.3d at 535 (stating that, if the court assumed some minimum level of injury is required, the plaintiffs' alleged injuries--bruises, a facial laceration, hospitalization, and posttraumatic stress disorder--would satisfy such a requirement).

IV.

Mayor Bise and Chief Shoemake next argue that the District Court erred when it admitted evidence of the alleged affair between Mayor Bise and Mrs. Goff. The jury, the defendants argue, was asked to evaluate whether officers in the position of Mayor Bise and Chief Shoemake could reasonably believe there was probable cause to arrest Mr. Goff and whether the amount of force used was reasonable considering the circumstances. These are objective determinations. The defendants assert that evidence of the affair would indicate only the subjective motivation of the arresting officers, which were irrelevant to the jury's required determinations. We review the District Court's ruling on the admissibility of this evidence for abuse of discretion. See Excel Corp. v. Bosley, 165 F.3d 635, 640 (8th Cir. 1999).

The Supreme Court has recognized that in some § 1983 actions it may be appropriate to consider evidence that a defendant police officer had ill-will toward the plaintiff. See Graham, 490 U.S. 386, 399 n.12 (1989) ("[I]n assessing the credibility of an officer's account of the circumstances that prompted the use of force, a fact finder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen."). Mr. Goff alleged that Mayor Bise and Chief Shoemake had abused their authority as law enforcement officers to gain an advantage in a private dispute. The jurors were asked to decide whether they believed Mr. Goff's account that

he was arrested and beaten due to Mayor Bise's personal animosity toward him or Mayor Bise's and Chief Shoemake's accounts that they arrested Mr. Goff for an appropriate reason and used appropriate force when making the arrest. To enable the jury to make a more accurate determination, the District Court indicated it would allow limited disclosure of information about the alleged alienation of affection. See Trial Tr. at 6 ("Of course, I am going to let the alienation of affections [evidence in]--I am not going to let you spend a whole lot of time, but I don't think you can show the background of this case without showing that, that that is the basis of the whole altercation.").[5]

The defendants argue that, because Mr. Goff admitted he had kicked at Mayor Bise, they had probable cause to arrest Mr. Goff and a reasonable basis to use force, so the jury had no reason to consider the background of the conflict or make credibility determinations. This Court has recognized that, where there is undisputed evidence that a police officer had probable cause to arrest a person, this Court will not consider whether the police officer had a second, possibly improper basis for believing he could make the arrest. See Foster v. Metropolitan Airport Comm'n, 914 F.2d 1076, 1080-81 (8th Cir. 1990) (refusing to consider whether a police officer improperly believed he could arrest the plaintiff for verbal abuse and tearing up a parking ticket where the plaintiff had not challenged the officer's claim that he reasonably believed he could arrest the plaintiff for interfering with the officer's performance of official duties). Here, however, the defendants do not have an uncontested basis for making the arrest and using force. Mr. Goff admitted that he attempted to kick at Mayor Bise during the arrest, but this is not an admission that the officers had probable cause to arrest Mr. Goff and to use force. Rather, Mr. Goff says he kicked at Mayor Bise only after feeling pain from the handcuff Mayor Bise had placed on his wrist. Therefore, this case

[5]The defendants did not object to and do not appeal the amount of evidence concerning the affair that was admitted or the admission of any particular evidence concerning the affair.

is not governed by <u>Foster</u>. Rather, Mr. Goff's allegations are more like those in <u>Motes v. Myers</u>, 810 F.2d 1055 (11th Cir. 1987), a case that the <u>Foster</u> court identified as an example of when it "may be appropriate to consider the arresting officer's motive." <u>Foster</u>, 914 F.2d at 1080. Similar to the plaintiff in <u>Motes</u>, Mr. Goff alleged he was illegally arrested with excessive force purely because of a private dispute between himself and Mayor Bise, one of the arresting officers. <u>Cf.</u> <u>Motes</u>, 810 F.2d at 1060. In these unusual circumstances, we cannot say the District Court abused its discretion in admitting evidence from which the jury could find that the arresting officers were actuated by an improper motive.

V.

Finally, Mayor Bise and Chief Shoemake argue that the District Court erred when it refused to instruct the jury that section 5-54-103 of the Arkansas Code imposed a duty on Mr. Goff to submit to arrest, without resistance, even if the arrest was unjustified. This Court reviews a district court's decisions regarding jury instructions for abuse of discretion. <u>See</u> <u>Cox</u>, 163 F.3d at 464.

The District Court did not abuse its discretion by omitting the requested instruction. This Court decided the precise question presented here in <u>Jackson v. Crews</u>, 873 F.2d 1105 (8th Cir. 1989). In <u>Jackson</u>, this Court held that in a § 1983 excessive-force case, "an instruction to the jury that one has a duty to submit to lawful arrest is plainly irrelevant to the issue of whether the officer used excessive force in effecting the arrest." <u>Id.</u> at 1109. <u>Jackson</u> is the law of this Circuit and forecloses the defendants' argument. Evidence of an arrestee's resistance and the nature of that resistance is, of course, always relevant to the jury's consideration of whether the force used by the officers in subduing the arrestee was excessive. But that provides no reason for instructing the jury that a statute forbids resistance against officers attempting to make an arrest. A district court that might choose to instruct the jury

-12-

regarding the duty of non-resistance would need to exercise particular care in crafting the instruction so as to avoid in effect directing the jury to find for the defendants.

## VI.

Having considered all the defendants' arguments, we find no basis for reversal. The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.