(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ORTIZ *v.* JORDAN ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 09–737.   Argued November 1, 2010—Decided January 24, 2011

Petitioner Ortiz, a former inmate in an Ohio reformatory, brought a civil rights action under 42 U. S. C. §1983 seeking a judgment for damages against superintending prison officers.  On two consecutive nights during her incarceration, Ortiz stated, she was sexually assaulted by a corrections officer.  Although she promptly reported the first assault, she further alleged, respondent Jordan, a case manager in her living unit, did nothing to ward off the second sexual assault, despite Jordan's awareness of the substantial risk of that occurrence. Ortiz further charged that respondent Bright, a prison investigator, retaliated against Ortiz for her accusations by placing her, shackled and handcuffed, in solitary confinement in a cell without adequate heat, clothing, bedding, or blankets.  The responses of both officers, she said, violated her right, safeguarded by the Eighth and Fourteenth Amendments, to reasonable protection from violence while in custody.

   Jordan and Bright moved for summary judgment on pleas of "qualified immunity."  The District Court, noting factual disputes material to Ortiz's claims and the officers' qualified immunity defenses, denied the summary judgment motion.  The officers did not appeal that ruling.  The case proceeded to trial, and the jury returned a verdict against Jordan and Bright.  They sought judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), both at the close of Ortiz's evidence and at the close of their own presentation.  But they did not contest the jury's liability finding by renewing, under Rule 50(b), their request for judgment as a matter of law.  Nor did they request a new trial under Rule 59(a).  The District Court entered judgment for Ortiz.  On appeal, Jordan and Bright urged, *inter alia*, that the District Court should have granted their motion for

summary judgment based on their qualified immunity defense. The Sixth Circuit agreed and reversed the judgment entered on the jury's verdict, holding that both defendants were sheltered from Ortiz's suit by qualified immunity.

*Held:* A party may not appeal a denial of summary judgment after a district court has conducted a full trial on the merits. A qualified immunity plea, not upheld at the summary judgment stage, may be pursued at trial, but at that stage, the plea must be evaluated in light of the character and quality of the evidence received in court. Ordinarily, orders denying summary judgment are interlocutory and do not qualify as "final decisions" subject to appeal under 28 U. S. C. §1291. Because a qualified immunity plea can spare an official not only from liability but from trial, this Court has recognized a limited exception to the categorization of summary judgment denials as non-appealable orders. *Mitchell* v. *Forsyth*, 472 U. S. 511, 525–526. The exception permits an immediate appeal when summary judgment is denied to a defendant who urges that qualified immunity shelters her from suit. *Id.,* at 527. Such an immediate appeal is not available, however, when the district court determines that factual issues genuinely in dispute preclude summary adjudication. *Johnson* v. *Jones*, 515 U. S. 304, 313. Here, Jordan and Bright sought no immediate appeal from the denial of their summary judgment motion. Nor did they avail themselves of Rule 50(b), which permits the entry of judgment, postverdict, for the verdict loser if the court finds the evidence legally insufficient to sustain the verdict. Absent such a motion, an appellate court is "powerless" to review the sufficiency of the evidence after trial. *Unitherm Food Systems, Inc.* v. *Swift-Eckrich, Inc.*, 546 U. S. 394, 405. This Court need not address the officers' argument that a qualified immunity plea raising a "purely legal" issue is preserved for appeal by an unsuccessful summary judgment motion even if the plea is not reiterated in a Rule 50(b) motion. Cases fitting that bill typically involve disputes about the substance and clarity of pre-existing law. In this case, however, what was controverted was not the pre-existing law, but the facts that could render Jordan and Bright answerable under §1983, *e.g.*, whether Jordan was adequately informed, after the first assault, of the assailant's identity and of Ortiz's fear of a further assault. Because the dispositive facts were disputed, the officers' qualified immunity defenses did not present "'neat abstract issues of law.'" *Johnson*, 515 U. S., at 317. To the extent that Jordan and Bright urge Ortiz has not proved her case, they were, by their own account, obliged to raise that sufficiency-of-the-evidence issue by postverdict motion for judgment as a matter of law under Rule 50(b). They did not do so. The Sixth Circuit, therefore, had no warrant to upset the jury's decision on their liability. Pp. 6–

Syllabus

11.

316 Fed. Appx. 449, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment, in which SCALIA and KENNEDY, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 09–737

———

## MICHELLE ORTIZ, PETITIONER *v.* PAULA JORDAN ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 24, 2011]

JUSTICE GINSBURG delivered the opinion of the Court.

We address in this case a procedural issue arising in a civil rights action brought under 42 U. S. C. §1983 by Michelle Ortiz, a former inmate at the Ohio Reformatory for Women.  Plaintiff below, petitioner here, Ortiz filed a complaint in federal court stating key facts on which she based claims for damages against superintending prison officers.  On two consecutive nights during her one-year incarceration, Ortiz stated, she was sexually assaulted by a corrections officer.  Although she promptly reported the first incident, she further alleged, prison authorities took no measures to protect her against the second assault. After that assault, Ortiz charged, and in retaliation for accounts she gave of the two episodes, prison officials placed her, shackled and handcuffed, in solitary confinement in a cell without adequate heat, clothing, bedding, or blankets.  The treatment to which she was exposed, Ortiz claimed, violated her right, safeguarded by the Eighth and Fourteenth Amendments, to reasonable protection from violence while in custody.

Principal defendants in the suit, Paula Jordan, a case

manager at Ortiz's living unit, and Rebecca Bright, a prison investigator, moved for summary judgment on their pleas of "qualified immunity," a defense that shields officials from suit if their conduct "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982). Finding that the qualified immunity defense turned on material facts genuinely in dispute, see Fed. Rule Civ. Proc. 56(a), the District Judge denied summary judgment. *Ortiz* v. *Voinovich*, 211 F. Supp. 2d 917, 923–930 (SD Ohio 2002).

The case then proceeded to trial, and the jury returned verdicts for Ortiz against both Jordan and Bright. The two officers appealed to the United States Court of Appeals for the Sixth Circuit, targeting, *inter alia*, the denial of their pretrial motion for summary judgment. "[C]ourts normally do not review the denial of a summary judgment motion after a trial on the merits," the Court of Appeals recognized. 316 Fed. Appx. 449, 453 (2009). Nevertheless, the Court continued, "denial of summary judgment based on qualified immunity is an exception to this rule." *Ibid.* Reversing the judgment entered on the jury's verdict, the appeals court held that both defendants were sheltered from Ortiz's suit by qualified immunity.

We granted review, 559 U. S. ___ (2010), to decide a threshold question on which the Circuits are split: May a party, as the Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits?[1] Our answer is no. The order retains its interlocutory

--------

[1] Compare, *e.g.*, *Black* v. *J. I. Case Co.*, 22 F. 3d 568, 570–571 (CA5 1994) (declining to review denial of summary judgment after trial); *Price* v. *Kramer*, 200 F. 3d 1237, 1243–1244 (CA9 2000) (no exception where summary judgment rejected assertion of qualified immunity), with *Goff* v. *Bise*, 173 F. 3d 1068, 1072 (CA8 1999) (denial of summary judgment based on qualified immunity reviewable after trial on the merits); 316 Fed. Appx. 449, 453 (CA6 2009) (case below) (same).

character as simply a step along the route to final judgment. See *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949). Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion. A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily. The plea remains available to the defending officials at trial; but at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court.

When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication. "[O]nce trial has been had," however, "the availability of official immunity should be determined by the trial record, not the pleadings nor the summary judgment record." 15A C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §3914.10, p. 684 (2d ed. 1992 and Supp. 2010). After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense. See Fed. Rule Civ. Proc. 50(a), (b) (stating conditions on which judgment may be granted as a matter of law).

In the case before us, the Court of Appeals, although purporting to review the District Court's denial of the prison officials' pretrial summary-judgment motion, 316 Fed. Appx., at 453, several times pointed to evidence presented only at the trial stage of the proceedings, see *id.*, at 453–454. The appeals court erred, but not fatally, by incorrectly placing its ruling under a summary-judgment headline. Its judgment was infirm, however, because Jordan's and Bright's failure to renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) left the appellate forum with no warrant to reject the appraisal of the evidence by "the

judge who saw and heard the witnesses and ha[d] the feel of the case which no appellate printed transcript can impart." *Cone* v. *West Virginia Pulp & Paper Co.*, 330 U. S. 212, 216 (1947).

I

Michelle Ortiz, serving a sentence for aggravated assault against her husband,[2] maintained that she was sexually assaulted on consecutive days by Corrections Officer Douglas Schultz. On Friday, November 8, 1996, Ortiz recounted, Schultz walked up behind her in the washroom of her living quarters and grabbed one of her breasts.[3] Ortiz fended off the assault, but Schultz returned later that day and threatened to "see [her] tomorrow," Tr. 36.

The next day, Ortiz described the incident to Jordan. After assuring Ortiz that "no one has the right to touch you," 316 Fed. Appx., at 451 (internal quotation marks omitted), Jordan told Ortiz that Schultz had been reassigned to another correctional facility and was serving his last day at the reformatory. Ortiz could file a written complaint, Jordan noted. She suggested, however, that Ortiz not do so, in view of Schultz's imminent departure. Jordan advised Ortiz that she "always ha[d] the right to defend [her]self," Tr. 43, and counseled her to "'hang out with [her] friends' for the rest of the day so that Schultz would not have the chance to be alone with her," 316 Fed. Appx., at 451 (alteration in original).

The day of her conversation with Ortiz, Jordan wrote an incident report describing her version of the encounter. In that account, Jordan stated that Ortiz had refused to

_____

[2] Ortiz maintained in her criminal prosecution that she acted in retaliation for multiple incidents of domestic violence to which she had been subjected over a span of several years. 316 Fed. Appx., at 450.

[3] The accounts of the episodes-in-suit described here recite facts the jury reasonably could have found from the testimony presented at trial.

name her assailant or provide any other information about the assault. Jordan did not immediately notify her superiors of the assault Ortiz reported and Ortiz's consequent fears about her safety. Taking the incident report home in her workbag, Jordan submitted it upon her return to work two days later.

Ortiz endeavored to follow Jordan's advice about staying in the company of friends. But later in the day, feeling ill, she returned to her room and fell asleep. Three other inmates were in the room when Ortiz went to sleep. They were gone when she awoke to find Schultz standing over her, one hand fondling her left breast, the fingers of the other hand inside her underwear penetrating her vagina.

Bright's investigation began two days after the second assault. During its course, Bright placed Ortiz in solitary confinement. Ortiz maintained that Bright isolated her in retaliation for her accusations against Schultz. Bright, however, testified that she segregated Ortiz because Ortiz continued to discuss the investigation with other inmates, disobeying Bright's repeated instructions to refrain from speaking about it.

In her §1983 action, Ortiz claimed that Jordan did nothing to ward off Schultz's second sexual assault, despite Jordan's awareness of the substantial risk of that occurrence. Bright, Ortiz charged, retaliated against her because she resisted Bright's efforts to induce her to retract her accounts of Schultz's assaults. (Schultz, having resigned from state employment, could not be found and served with process.) The District Court, noting multiple factual disputes material to Ortiz's claims and the officers' defense of qualified immunity, denied summary judgment to Jordan and Bright, 211 F. Supp. 2d, at 923–930;[4] nei-

---

[4] As to Jordan, the District Court determined, *inter alia*, that "a jury could reasonably find . . . that Ortiz did inform Jordan of Schultz's identity," and that "Ortiz made Jordan aware that [Ortiz] reasonably

ther defendant appealed the District Court's denial of summary judgment.

The case proceeded to trial, and a jury returned a verdict of \$350,000 in compensatory and punitive damages against Jordan and \$275,000 against Bright.  Jordan and Bright sought judgment as a matter of law, pursuant to Rule 50(a), both at the close of Ortiz's evidence and at the close of their own presentation.  But they did not contest the jury's liability finding by renewing, under Rule 50(b), their request for judgment as a matter of law.  Nor did they request a new trial under Rule 59(a).  The District Court entered judgment for Ortiz in accordance with the jury's verdict.

On appeal, Jordan and Bright urged both that the District Court should have granted them summary judgment on their defense of qualified immunity and that the verdict was "against the weight of the evidence."  Brief for Defendants-Appellants in No. 06–3627 (CA6), pp. 21, 26. Appraising the parties' evidence under a *de novo* standard of review, the Court of Appeals "reverse[d] the denial of qualified immunity to both Bright and Jordan."  316 Fed. Appx., at 455.[5]

We granted certiorari to resolve the conflict among the Circuits as to whether a party may appeal a denial of summary judgment after a district court has conducted a full trial on the merits.  See n. 1, *supra.*

————————

feared a further sexual attack."  211 F. Supp. 2d, at 925.  Concerning Bright, the Court noted that "[a] jury could reasonably find that Bright['s] . . . purported reason for placing Ortiz in security control was pretextual."  *Id.*, at 928.

[5] Judge Daughtrey dissented; in her view, the strength of the evidence against Jordan and Bright amply supported the jury's verdict. 316 Fed. Appx., at 456–457.  Quoting *Kiphart* v. *Saturn Corp.*, 251 F. 3d 573, 581 (CA6 2001), she observed that appellate courts "do not weigh the evidence, evaluate the credibility of witnesses or substitute our own judgment for that of the jury."  316 Fed. Appx., at 457.

## II

The jurisdiction of a Court of Appeals under 28 U. S. C. §1291 extends only to "appeals from . . . final decisions of the district courts." Ordinarily, orders denying summary judgment do not qualify as "final decisions" subject to appeal. Summary judgment must be denied when the court of first instance determines that a "genuine dispute as to [a] material fact" precludes immediate entry of judgment as a matter of law. Fed. Rule Civ. Proc. 56(a). Such rulings, we have observed, are "by their terms interlocutory." *Liberty Mut. Ins. Co.* v. *Wetzel*, 424 U. S. 737, 744 (1976).

Because a plea of qualified immunity can spare an official not only from liability but from trial, we have recognized a limited exception to the categorization of summary judgment denials as nonappealable orders. *Mitchell* v. *Forsyth*, 472 U. S. 511, 525–526 (1985). When summary judgment is denied to a defendant who urges that qualified immunity shelters her from suit, the court's order "finally and conclusively [disposes of] the defendant's claim of right not to stand trial." *Id.*, at 527 (emphasis deleted). Therefore, *Mitchell* held, an immediate appeal may be pursued. *Ibid.*

We clarified in *Johnson* v. *Jones*, 515 U. S. 304 (1995), that immediate appeal from the denial of summary judgment on a qualified immunity plea is available when the appeal presents a "purely legal issue," illustratively, the determination of "what law was 'clearly established'" at the time the defendant acted. *Id.*, at 313. However, instant appeal is not available, *Johnson* held, when the district court determines that factual issues genuinely in dispute preclude summary adjudication. *Ibid.*

Jordan and Bright sought no immediate appeal from the denial of their motion for summary judgment. In light of *Johnson*, that abstinence is unsurprising. Moreover, even had instant appellate review been open to them, the time

to seek that review expired well in advance of trial. See
Fed. Rule App. Proc. 4(a)(1)(A) (notice of appeal must
generally be filed "within 30 days after the judgment or
order appealed from"). Nor did they avail themselves of
Rule 50(b), which permits the entry, postverdict, of judg-
ment for the verdict loser if the court finds that the evi-
dence was legally insufficient to sustain the verdict. See
Fed. Rule Civ. Proc. 50(a), (b). Absent such a motion, we
have repeatedly held, an appellate court is "powerless" to
review the sufficiency of the evidence after trial.
*Unitherm Food Systems, Inc.* v. *Swift-Eckrich, Inc.*, 546
U. S. 394, 405 (2006); see *Cone*, 330 U. S., at 218.[6]

––––––––––

[6] Jordan and Bright contend that their failure to file a Rule 50(b)
motion cannot be the basis for overturning the judgment of the Court of
Appeals. Because Ortiz presented no argument about the absence of a
Rule 50(b) motion in her brief to the Sixth Circuit or in her petition for
certiorari, Jordan and Bright argue, she has forfeited the objection.
Jordan and Bright are not well positioned to make this argument.
They did not suggest that Ortiz had forfeited her Rule 50(b) objection,
or argue that such an objection is forfeitable, until their merits brief to
this Court. Ordinarily we do not consider "a nonjurisdictional argu-
ment not raised in a respondent's brief in opposition to a petition."
*Baldwin* v. *Reese*, 541 U. S. 27, 34 (2004) (internal quotation marks
omitted).

In any case, we do not see how Ortiz can be held to have forfeited
her Rule 50(b) objection. The arguments Jordan and Bright made in
the Court of Appeals invited no such objection. Jordan and Bright
urged on appeal that the jury's verdict was "against the weight of the
evidence." Brief for Defendants-Appellants in No. 06-3627 (CA6), pp.
21–43. A plea that a verdict is "against the weight of the evidence," of
course, is not equivalent to a plea that the evidence submitted at trial
was insufficient to warrant submission of the case to the jury. 11 C.
Wright, A. Miller, & E. Cooper, Federal Practice & Procedure §2806,
pp. 65–67 (2d ed. 1995 and Supp. 2010). A determination that a verdict
is against the weight of the evidence may gain a new trial for the
verdict loser, but never a final judgment in that party's favor. *Mont-
gomery Ward & Co.* v. *Duncan*, 311 U. S. 243, 250–251 (1940). Ortiz
objected, accordingly, that Jordan and Bright had not asked the Dis-
trict Court for a new trial and were therefore "bar[red] [from] appeal on
this ground." Brief for Plaintiff-Appellee in No. 06–3627 (CA6), p. 23.

"[Q]uestions going to the sufficiency of the evidence are not preserved for appellate review by a summary judgment motion alone," Jordan and Bright acknowledge; rather, challenges of that order "must be renewed post-trial under Rule 50." Brief for Respondents 11. Jordan and Bright insist, however, in defense of the Sixth Circuit's judgment, that sufficiency of the evidence is not what is at stake in this case. A qualified immunity plea raising an issue of a "purely legal nature," they urge, *ibid.*, is preserved for appeal by an unsuccessful motion for summary judgment, and need not be brought up again under Rule 50(b). *Id.*, at 11–12 (citing as pathmarking *Rekhi* v. *Wildwood Indus., Inc.*, 61 F. 3d 1313, 1318 (CA7 1995)). Unlike an "evidence sufficiency" claim that necessarily "hinge[s] on the facts adduced at trial," they maintain, a purely legal issue can be resolved "with reference only to undisputed facts." Brief for Respondents 16 (quoting *Mitchell*, 472 U. S., at 530, n. 10).

We need not address this argument, for the officials' claims of qualified immunity hardly present "purely legal" issues capable of resolution "with reference only to undisputed facts." Cases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law. See *Behrens* v. *Pelletier*, 516 U. S. 299, 313 (1996); *Johnson*, 515 U. S, at 317.

Here, however, the pre-existing law was not in controversy. See *Farmer* v. *Brennan*, 511 U. S. 825, 834, 847 (1994) (prison official may be held liable for "deliberate indifference" to a prisoner's Eighth Amendment right to protection against violence while in custody if the official "knows that [the] inmat[e] face[s] a substantial risk of serious harm and disregards that risk by failing to take

_____

Ortiz thus responded altogether appropriately to the arguments Jordan and Bright made.

reasonable measures to abate it" (internal quotation
marks omitted)); *Crawford-El* v. *Britton*, 523 U. S. 574,
592 (1998) (First Amendment shields prisoners from
"retaliation for protected speech").[7]   What was contro-
verted, instead, were the facts that could render Jordan
and Bright answerable for crossing a constitutional line.
Disputed facts relevant to resolving the officials' immunity
pleas included: Was Jordan adequately informed, after the
first assault, of the identity of the assailant, see App. 4,
and of Ortiz's fear of a further assault?  What, if anything,
could Jordan have done to distance Ortiz from the assail-
ant, thereby insulating her against a second assault?  See
*id.*, at 4–5.[8]  Did Bright place and retain Ortiz in solitary
confinement as a retaliatory measure or as a control
needed to safeguard the integrity of the investigation?[9]

  In sum, the qualified immunity defenses asserted by
Jordan and Bright do not present "neat abstract issues of
law."  See *Johnson*, 515 U. S., at 317 (quoting 15A C.

---

  [7] The Court of Appeals held that Ortiz's complaint had not properly
tied her claim against Bright to the First Amendment.  316 Fed. Appx.,
at 455.  "When an issue not raised by the pleadings is tried by the
parties' express or implied consent," however, "it must be treated in all
respects as if raised in the pleadings."  Fed. Rule Civ. Proc. 15(b)(2).
Bright, like the District Court, recognized the First Amendment inter-
ests at stake in Ortiz's claim against her.  See App. 11 (District Court,
in ruling on Rule 50(a) motion, inquired into Bright's authority to
"regulat[e] speech of inmates"); *id.*, at 20 (Bright's counsel argued
that Ortiz's segregation "would not have had a chilling effect" on her
speech).

  [8] Relevant to that matter, Bright testified at trial that, had Jordan
"reported the first incident immediately, 'the proper people would
have taken a role in protecting Mrs. Ortiz.'"  316 Fed. Appx., at 457
(Daughtrey, J., dissenting).

  [9] Apart from Bright's testimony, the defense produced no evidence
that Ortiz "continually" talked about the assaults or in any other way
interfered with the investigation.  See Tr. 271, 397 (Bright's testimony
acknowledging absence of any documentation regarding Ortiz's conduct
during investigation).

Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3914.10, p. 644 (1992)). To the extent that the officials urge Ortiz has not proved her case, they were, by their own account, obliged to raise that sufficiency-of-the-evidence issue by postverdict motion for judgment as a matter of law under Rule 50(b). See Brief for Respondents 11. They did not do so. The Court of Appeals, therefore, had no warrant to upset the jury's decision on the officials' liability.

*     *     *

For the reasons stated, the judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–737

_____

## MICHELLE ORTIZ, PETITIONER *v.* PAULA JORDAN ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 24, 2011]

JUSTICE THOMAS, with whom JUSTICE SCALIA and JUSTICE KENNEDY join, concurring in the judgment.

We granted certiorari to decide the narrow question whether a party may appeal an order denying summary judgment after a full trial on the merits. I agree with the Court that the answer is no. See *ante*, at 2–3. The Court also reaches beyond that question, however, to address the effect of Jordan and Bright's failure to renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). I would limit our decision to the question presented and remand for consideration of any additional issues.

As the Court concludes, a party ordinarily cannot appeal an order denying summary judgment after a full trial on the merits. See *ante*, at 7–8. Most such orders are not appealable at all, because they neither qualify as "final decisions" capable of appeal under 28 U. S. C. §1291 nor come within the narrow class of appealable interlocutory orders under §1292(a)(1). And for those that are appealable,* the time for filing an appeal will usually have run by the conclusion of the trial. See §2107(a) (providing that a

_____

* See *Mitchell* v. *Forsyth*, 472 U. S. 511, 524–530 (1985) (holding that some orders denying summary judgment constitute "'final decisions'" under the collateral order doctrine).

notice of appeal in a civil case generally must be filed "within thirty days" after entry of the relevant judgment or order); Fed. Rule App. Proc. 4(a)(1)(A).

This case is the ordinary case. Even if the order denying summary judgment qualified under the collateral order doctrine as an appealable "final decision" under §1291, the time for filing that appeal expired long before trial. *Ante*, at 7–8. The Court of Appeals therefore lacked jurisdiction to review the order. I would reverse the judgment on that ground alone and remand for further proceedings.

The majority proceeds to consider the additional question whether Jordan and Bright's failure to file a Rule 50(b) motion deprived the Court of Appeals of the "'powe[r]'" to review the sufficiency of the trial evidence. See *ante*, at 3–4, 8 (quoting *Unitherm Food Systems, Inc.* v. *Swift-Eckrich, Inc.*, 546 U. S. 394, 405 (2006)). The Court does so because it concludes that the Court of Appeals did not confine itself to the pretrial record and instead reviewed the trial evidence. *Ante,* at 3.

I do not think it necessary to reach beyond the question presented. It is clear from the opinion that the appeals court reviewed the order denying summary judgment, and that was error. The Court of Appeals explained that "[a]lthough courts normally do not review the denial of a summary judgment motion after a trial on the merits," this case "is an exception to th[at] rule." 316 Fed. Appx. 449, 453 (CA6 2009). And to support that conclusion, the court cited *Goff* v. *Bise*, 173 F. 3d 1068 (1999), in which the Eighth Circuit reviewed an order denying summary judgment. Finally, the Court of Appeals equated its review in this case to the review of an "interlocutory appea[l] of qualified immunity," which suggests that the court saw itself as reviewing the interlocutory order denying summary judgment. 316 Fed. Appx., at 453. Whether, in erroneously reviewing the order denying summary judg-

ment, the Court of Appeals considered the pretrial or full trial record is beside the point.

I also think it unwise to reach the Rule 50 issue and the questions that follow. Ortiz's opening brief at the merits stage focused on the question presented—whether the Court of Appeals lacked jurisdiction to review an order denying summary judgment. It was not until Jordan and Bright's response brief in this Court, in which they argued that they had not actually appealed the order denying summary judgment, that the Rule 50 issues were addressed at any length. This Court normally proceeds more cautiously. Moreover, the Court of Appeals did not address these issues at all, and we are ordinarily "a court of final review and not first view." *Adarand Constructors, Inc.* v. *Mineta*, 534 U. S. 103, 110 (2001) *(per curiam)* (internal quotation marks omitted). This seems a good rule to follow in a case like this, which raises difficult and far-reaching questions of civil procedure.

For these reasons, I would resolve only the question on which we granted certiorari. I concur in the judgment.